UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BAINBRIDGE FUND LTD.,

                    Plaintiff,

-against-

THE REPUBLIC OF ARGENTINA,

                    Defendant.

No. 16 CV 8605 (LAP)

MEMORANDUM & ORDER

LORETTA A. PRESKA, Senior United States District Judge:

Plaintiff Bainbridge Fund Ltd. ("Bainbridge") brought suit against the Republic of Argentina ("Argentina" or the "Republic") seeking to recover amounts due as a result of the Republic's default on certain global debt securities. Bainbridge moved for summary judgment in May 2020. (See dkt. nos. 28-31.) On December 1, 2020, on consent of the Republic, the Court granted summary judgment to Bainbridge on its claim to relief with respect to the "US040114GG96 Bonds," which is governed by the 1994 Fiscal Agency Agreement (the "FAA"). (Dkt. no. 40.) Consistent with that order, the Court entered judgment against the Republic in the amount of $95,424,899.38, comprising principal and interest owed on the bonds through December 1, 2020. (Dkt. no. 41. (the "Judgment").)

According to Bainbridge, and not disputed by the Republic, Bainbridge has attempted to collect on the judgement but has not met with success. (Dkt. no. 53-3.) Thus, Bainbridge moves

1

pursuant to FRCP 69(a)(1) and NY CPLR 5225(a) for an order compelling the Republic to turnover foreign assets sufficient to satisfy the judgment against it.  (Dkt. nos. 51-53.)

For the reasons that follow, the motion is denied without prejudice.

### A.   Underlying Agreements

#### 1.   The FAA

The parties agree that the bonds at issue are governed by the FAA.  Pursuant to the FAA, the Republic consented to personal jurisdiction in this Court and agreed that the FAA is governed by and construed in accordance with New York law. (Dkt. no. 53-4, Ex. A ¶¶ 22, 23.)   The Republic also "irrevocably waive[d] and agree[d] not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Securities or this Agreement by the holder of any Security." (Id. ¶ 22.)

#### 2.   Form of Securities Agreement

The FAA provides that securities issued pursuant to the FAA shall be issued "substantially in the form" of the Form of Securities Agreement appended to the FAA as Exhibit A.  (Id. ¶ 1(b)).  As relevant here, the Form of Securities Agreement confirms that the "Republic has in the [FAA] irrevocably submitted to the jurisdiction of any New York state or federal

2

court sitting in the Borough of Manhattan . . . over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series of the [FAA]." (Id. A-17.)  The Republic further "agree[d] that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court . . . by a suit upon such judgment." (Id.)  And the Republic agreed that

> [t]o the extent that the Republic or any of its revenues, assets or properties shall be entitled . . . to any immunity from suit, from the jurisdiction of any such court, from set-off, from attachment prior to judgment, [from] attachment in aid of execution of judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction (and consents generally for the purposes of the Foreign Sovereign Immunities Act [the ("FSIA")] to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgement), provided that such waiver shall not be effective (i) with respect to assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law . . . .

(Id. at A-18.)

### 3. Specimen Note

Consistent with the Form of Securities Agreement, the actual Specimen Note for the US040114GG96 Bond at issue here contains substantially, but not entirely, the same language.

In addition to consenting to the jurisdiction of New York state and federal courts and agreeing that final non-appealable judgments are "conclusive and binding" and "may be enforced" by suit, The Republic agreed that

> [t]o the extent that the Republic or any of its revenues, assets or properties shall be entitled . . . to any immunity from suit . . . from execution of a judgment or from any other legal or judicial process or remedy . . . the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction and consents generally for the purposes of the [FSIA] to the giving of any relief . . . in connection with any . . . Related Judgment, <u>provided</u> that attachment prior to judgment or attachment in aid of execution shall not be ordered by the Republic's courts with respect to (i) the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law . . . .

(Dkt no. 61-1 (the "Specimen Note") at 12.)

**B.  Legal Standard for Turnover**

Federal Rule of Civil Procedure 69(a)(1) provides that the "procedure on execution" and "proceedings supplementary to and in aid of judgment or execution" enforcing a money judgment "must accord with the procedure of the state where the court is located."  <u>See, e.g.</u>, <u>All. Bond Fund, Inc. v. Grupo Mexicano De Desarrollo, S.A.</u>, 190 F.3d 16, 20 (2d Cir. 1999).  NY CPLR 5225(a) in turn sets forth New York's procedure for enforcement of money judgments against property in the possession of the judgment debtor.  <u>See, e.g.</u>, <u>Koehler v. Bank of Berm. Ltd.</u>, 12 N.Y.3d 533, 537-38 (2009).  It provides that "where it is shown

that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor."  (N.Y. C.P.L.R. 5225(a)).

Turnover orders pursuant to CPLR 5225(a) "are effective against assets regardless of their location." Motorola Credit Corp. v. Uzan, 739 F. Supp. 2d 636, 641 (S.D.N.Y. 2010); see also Koehler, 12 N.Y.3d at 541 ("[A] New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property").  Indeed, New York courts routinely order parties subject to New York courts' jurisdiction to satisfy money judgments with funds located in bank accounts outside of New York, both within and without the United States. See e.g.,  Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V., 836 N.Y.S.2d 4, 12 (1st Dep't 2007) (holding that turnover order "should have included the defendants' property in Indonesia"); Miller v. Doniger, 814 N.Y.S.2d 141, 141 (1st Dep't 2006) (affirming order directing judgment debtor to "turn over his out-of-State Wachovia account"); Starbare II Partners L.P. v. Sloan, 629 N.Y.S.2d 23 (1st Dep't 1995) (directing defendant to turn over artwork located outside the state pursuant to CPLR 5225(a)); see also In re Feit & Drexler, Inc. v. Drexler, 760 F.2d 406, 414 (2d Cir. 1985) (holding that the district court,

5

sitting in bankruptcy, had the power to compel the defendant to deliver property from outside the court's territorial jurisdiction because the court had personal jurisdiction over the defendant); In re Gaming Lottery Sec. Litig., No. 96-cv-5567 (RPP), 2001 WL 123807, at *3 (S.D.N.Y. Feb. 13, 2001) (noting that the Court "has the power under CPLR § 5225(a) to order a turnover of funds held in another jurisdiction" and ordering the turnover of funds "in an account at the Royal Bank of Scotland").  In Koehler, the New York Court of Appeals expressly addressed funds held outside New York, holding that "CPLR article 52 contains no express territorial limitation barring the entry of a turnover order that requires . . . [the transfer] of money or property into New York from another state or country."  12 N.Y.3d at 539.

### C.  Discussion

The Republic opposes the entry of an order directing it to turnover assets held by Argentina's central bank by arguing, among other things, that:  (1) the assets are immune from turnover under the FSIA because they are located outside the United States and (2) Bainbridge has not shown that the assets are subject to execution once brought into the United States under the FSIA.  The Court discusses these arguments below.

### 1.   The Assets Are Not Immune from Turnover Under the FSIA By Virtue of Being Outside the United States

In 2014, the Supreme Court addressed whether the FSIA provided "absolute execution immunity" such that a judgment creditor is unable to obtain post-judgment discovery of foreign-state assets held outside the United States.  See Republic of Arg. v. NML Cap., Ltd., 573 U.S. 134, 143 (2014) (emphasis omitted).  The Supreme Court held that Section 1609 of the FSIA "immunizes only foreign-state property 'in the United States.'" Id. at 144.  Because the FSIA extends only to assets in the United States, discovery into foreign assets was not proscribed by the FSIA.

The Court of Appeals interpreted the FSIA post-NML Capital in Peterson v. Islamic Republic of Iran, which, although not binding, is instructive.  876 F.3d 63, 90 (2d Cir. 2017) cert. granted, judgment vacated sub nom. Clearstream Banking S.A. v. Peterson, 140 S. Ct. 813 (2020), and adopted in part, 963 F.3d 192 (2d Cir. 2020).  In Peterson, the Court of Appeals addressed whether the FSIA barred a court that had personal jurisdiction over a non-sovereign third party from issuing an order pursuant to CPLR 5225 requiring that non-sovereign third party to recall to New York property belonging to the sovereign.  876 F.3d at 90.  The Court of Appeals found that "[t]he FSIA does not by its terms provide execution immunity to a foreign sovereign's

extraterritorial assets" and thus that "Section 1609's grant of execution immunity applies only to assets located 'in the United States.'"   Id. at 90-91.   The Court of Appeals reasoned that the "Supreme Court's view set forth in NML Capital appears unequivocal: '[A]ny sort of immunity defense made by a foreign sovereign in an American court must stand on the Act's text.   Or it must fall.'"   Id. (quoting NML Capital, 573 U.S. at 141-42). Because, by its plain terms, the FSIA applies only to property in the United States, the Court of Appeals found that "NML Capital and Koehler, when combined, do authorize a court sitting in New York with personal jurisdiction over a non-sovereign third party to recall to New York extraterritorial assets owned by a foreign sovereign."   Id. at 92.   In so holding, the Court of Appeals disavowed "the many cases cited by the defendants for the proposition that a foreign sovereign's extraterritorial assets are absolutely immune from execution" because they "were decided before the Supreme Court's decision in NML Capital, which made clear that such cases predating NML Capital are no longer binding on this discrete point."   Id. at 91.

The Court finds Peterson persuasive and applicable here. Though Peterson involved a non-sovereign third party, the Court of Appeals' reasoning extends to any party over which the Court has personal jurisdiction.   Indeed, the Court of Appeals stated that "[h]ad Koehler arisen in the context of an exercise of in

personam jurisdiction over a foreign sovereign—it did not—the
FSIA's grant of jurisdictional immunity would supersede contrary
state law." Peterson, 876 F.3d at 92.  This suggests that
Koehler applies so long as there is no conflict with the FSIA.
Here, there is no conflict because the Court indisputably has
personal jurisdiction over the Republic consistent with the
FSIA.  (Judgment; see also dkt. no. 53-4 Ex. A ¶ 22.)  Thus, New
York state law is not, in this instance, contrary to the FSIA,
and the FSIA, therefore, does not supersede CPLR 5225 and
prevent the Court from ordering the Republic, a judgment debtor
over which it has personal jurisdiction, to bring assets from
outside of New York into New York to pay Bainbridge.  The
execution immunity provision of the FSIA is no bar because by
its plain terms it "immunizes only foreign-state property 'in
the United States.'"  NML Capital, 573 U.S. at 144; see also
Peterson, 876 F.3d at 92-93 (same), which the assets Bainbridge
seeks are indisputably not.  Thus, the FSIA does not immunize
these assets.

> **2.   Whether the Assets Are Immune from Execution Once
>        Brought into the United States**

This does not end the sovereign immunity analysis.
Peterson called for a "two-step process" in which the relevant
asset is first recalled and then analyzed pursuant to the FSIA.
Peterson, 876 F.3d at 95.  The Court of Appeals reasoned that,

once the asset was recalled to the United States, it would "qualify as an asset 'in the United States of a foreign state'" that should "be afforded execution immunity." Id. at 94 (quoting 28 U.S.C. § 1609). Thus, the Court must consider whether that asset "is subject to the execution-immunity exceptions relied on by" the party seeking to execute against those assets. Id.

The Court of Appeals suggested that the execution-immunity exception analysis occur after the asset is recalled. However, the Court of Appeals was faced with different facts from those present here. In Peterson, the question was whether a sovereign's asset that was in the possession of a third party, and not in the possession of or available for use by the sovereign, could be recalled. Here, the assets Bainbridge seeks belong directly to the Republic and, the Republic contends, are used for government functions. If the Court followed the two-step process set out in Peterson and ordered that assets that are ultimately subject to execution immunity be brought to the United States, the functioning of the Republic's government would be subject to potentially substantial, and unwarranted, disruption and interference with its sovereign activity, including the provision of services to its citizens. Under these circumstances, the Court determines that the more prudent course is to evaluate whether the assets are subject to

10

execution immunity before ordering that they be brought to the United States.  The Court therefore must consider whether the assets that Bainbridge seeks to execute against would, if recalled, be subject to execution immunity pursuant to 28 U.S.C. section 1610(a).

Bainbridge contends that the Republic's assets are not immune from execution pursuant to the exception set forth in 28 U.S.C. section 1610(a)(1).  Bainbridge argues that: (1) due to the Republic's broad waivers of sovereign immunity contained in the documents governing the bonds, the Republic waived the requirement that the asset be used for commercial activity in the United States and (2) that even if the Republic did not waive the commercial activity requirement, the relevant assets were used for commercial activity in the United States.  (Dkt. no. 52 at 12-14; dkt. no. 66 at 5-10.)  The Court address each argument in turn.

> a.   **The Republic did Not Waive the Requirement that the Assets be Used for Commercial Activity in the United States**

Bainbridge argues that the Republic's "consent[] generally for the purposes of the [FSIA] to the giving of any relief . . . in connection with any . . . Related Judgment" necessarily waived "any argument that the funds are not used for a 'commercial activity in the United States.'"  (Dkt. no. 52 at 13 (first quoting the Specimen Note at 12 and then 28 U.S.C.

§ 1610(a).)  Bainbridge questions how one could "consent to 'any relief' under the FSIA and then argue that the FSIA precludes the relief sought" (dkt. no. 52 at 13) or how "a limitation imposed solely by the FSIA" can "survive a consent to any relief for a judgment obtained pursuant to the FSIA" (dkt. no. 66 at 7).

Bainbridge employs rhetorical questions because the answer the case law supplies is not to its liking.  Pursuant to section 1610(a), execution is authorized "only if the property is 'used for a commercial activity in the United States,' even if the foreign sovereign has waived its immunity."  Aurelius Cap. Partners, LP v. Republic of Arg., 584 F.3d 120, 130 (2d Cir. 2009) (quoting 28 U.S.C. § 1610(a)) (emphasis added).  Indeed, in EM Ltd. v. Republic of Arg., while evaluating an identical waiver, the Court of Appeals found "without merit" the argument that the waiver, which provided that the Republic "irrevocably agreed not to claim and has irrevocably waived . . . immunity to the fullest extent permitted by the laws of [the] jurisdiction," served as an "affirmative[] pledge[] not to assert . . . immunity in proceedings to enforce the Judgment."  473 F.3d 463, 481 n.19 (2d Cir. 2007).  The Court of Appeals reasoned that the waiver and pledge were coextensive and were to be read alongside the FSIA, which allows for "execution against a foreign state's property only if the property is eligible for attachment under a

12

specific provision of the FSIA." Id. (emphasis added). Thus,
both waiver and commercial activity in the United States were
required because "[t]o conclude otherwise would render
meaningless the provisions of §§ 1610(a) & (d), which subject to
attachment property of a foreign state when the property is
'used for a commercial activity' and when the foreign state 'has
waived its immunity from attachment.'" Id. (quoting 28 U.S.C.
§ 1610(a)(1)); see also Conn. Bank of Com. v. Republic of Congo,
309 F.3d 240, 247 (5th Cir. 2002) ("[I]f a foreign sovereign
waives its immunity from execution, U.S. courts may execute
against 'property in the United States . . . used for a
commercial activity in the United States.' 28 U.S.C.
§ 1610(a)(1). Even when a foreign state completely waives its
immunity from execution, courts in the U.S. may execute only
against property that meets these two statutory criteria."). 
The Court of Appeals also declined to consider "what remedy, if
any, a judgment creditor might have against a foreign state that
violated an explicit promise not to assert any of the non-
waivable protections of the FSIA in attachment proceedings,
because the Republic did not make any such promise to
plaintiffs." EM Ltd., 473 F.3d at 481 n.19.

Bainbridge attempts to distinguish this holding by arguing
that the Court of Appeals did not focus on the precise words
that Bainbridge identifies, the Republic's "consent[] generally

13

for the purposes of the [FSIA] to the giving of any relief . . .
in connection with any . . . Related Judgment." (Specimen Note
at 12.)[1] Bainbridge contends that while the Court of Appeals in
EM Ltd. found that the Republic's promise "not to assert
sovereign immunity and its waiver of sovereign immunity 'to the
fullest extent permitted by the laws of the jurisdiction' [were]
coextensive" with each other, the Republic's consent to "the
giving of any relief with relation to a judgment under the FSIA
. . . is obviously not coextensive." (Dkt. no. 66 at 6-7
(quoting EM Ltd., 473 F.3d at 481 n.19).) Bainbridge argues
that the language cabining the waiver and promise not to assert
sovereign immunity to the "fullest extent permitted" does not
apply to the promise to give "any relief with relation to a
judgment under the FSIA." Id.

The Court is unpersuaded. The Court of Appeals had the
entire waiver before it and even quoted the exact language
Bainbridge latches onto as dispositive here. EM Ltd., 473 F.3d
at 468 ("The Republic also 'consent[ed] generally for the
purposes of the Foreign Sovereign Immunities Act to the giving

---

[1] Bainbridge also incorrectly characterizes the EM Ltd. waiver
holding as dicta. EM Ltd. held that the asset at issue was
immune from execution because it did not satisfy the commercial
activity requirement. A necessary predicate to this disposition
of the case was a holding that the commercial activity
requirement still applied. In any event, the purported "dicta"
is highly persuasive, as it gives effect to all provisions of 28
U.S.C. section 1610.

of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment . . . .'"). Though it did not reference this language in immediate proximity to its discussion of the continued applicability of the commercial activity requirement, the Court of Appeals unambiguously found that the Republic "did not make any . . . promise" "not to assert any of the non-waivable protections of the FSIA" based on its review of the waivers. Id. at 481 n.19. It is unclear how this Court, based on the same language, can conclude otherwise and find that the Republic did make that explicit promise.

However, even assuming that Bainbridge's argument is only the sibling, and not the twin, of the argument the Court of Appeals rejected in EM Ltd., the Court of Appeals' reasoning leads to the same result for several reasons. First, the Court of Appeals' decision, including its reference to the commercial activity "protections of the FSIA" as "non-waivable," suggests that it may not be possible to contract around the commercial activity requirements of the FSIA. Id. Second, the Court of Appeals rejected the argument in EM Ltd. because the waiver and the agreement not to claim immunity were both limited to the "extent permitted under the laws of the jurisdiction," and, consequently, the separate statutory requirements of the FSIA remained intact. Id. Similarly, the Specimen Note provides that the Republic "consents generally for the purposes of the

15

[FSIA] to the giving of any relief," clearly incorporating the FSIA into the consent.  (Specimen Note at 12 (emphasis added).) Thus, the best reading is that this provision too remains cabined by the statutory requirements of the FSIA.  Third, even if the consent could be construed as an implied promise not to assert a defense based on the other statutory requirements of the FSIA, it is certainly not "an explicit promise not to assert any of the non-waivable protections of the FSIA in attachment proceedings."  EM Ltd., 473 F.3d at 481 n.19 (emphasis added).

Thus, the Court finds that the FSIA's statutory requirement that the asset be "used for a commercial activity in the United States," 28 U.S.C. § 1610(a), applies and the Republic's assets are immune from execution unless they satisfy this requirement.

> **b. Bainbridge has not Satisfied its Burden of Demonstrating that the Assets Were Used for Commercial Activity in the United States**

"A defendant seeking to invoke the FSIA's protections must make a prima facie showing that it is a foreign sovereign." Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse (Fed. Office of Culture of the Swiss Confederation), 999 F.3d 808, 816 (2d Cir. 2021) (citing Rukoro v. Fed. Republic of Ger., 976 F.3d 218, 224 (2d Cir. 2020)). There is, and can be, no dispute that the Republic is a foreign sovereign.  Thus, the burden shifts to Bainbridge to "demonstrat[e] that an exception to foreign sovereign immunity

16

applies."  Id.  It is only if Bainbridge meets "its initial

burden of production," by showing that the assets were used for

commercial activity in the United States, that the burden shifts

back to the Republic to prove "by a preponderance of the

evidence" that the exception does not apply.  Id. at 817.[2]

The Republic argues that Bainbridge has not shown that the

relevant assets were used for commercial activities in the

United States.  (Dkt. no. 62 at 13-15.)  The Court agrees.

Indeed, the Court cannot engage in the proper analysis pursuant

to either CPLR 5225 or 28 U.S.C. section 1610(a) because

Bainbridge has not identified any specific asset at all.

Instead, Bainbridge has identified "International reserves" and

---

[2] The cited cases, and all the cases the Court could locate in
this Circuit, discuss the standard of proof for sovereign
immunity from suit, as opposed to sovereign immunity from
execution.  However, the D.C. and Ninth Circuit Courts of
Appeals agree that the standard and burden shifting are the same
in the execution context.  See FG Hemisphere Assocs. v.
Democratic Republic of Congo, 447 F.3d 835, 842 (D.C. Cir. 2006)
(applying same standard and burden shifting regime in evaluating
execution immunity); Peterson v. Islamic Republic of Iran, 627
F.3d 1117, 1128 (9th Cir. 2010) ("holding that the burden-
shifting approach to foreign sovereign immunity from suit also
applies to immunity from execution").  The Court agrees that
this is the appropriate standard, as it provides at least as
much protection to the sovereign's property as to the sovereign
itself.  Walters v. Indus. & Com. Bank of China, Ltd., 651 F.3d
280, 289 (2d Cir. 2011) ("the execution immunity afforded
sovereign property is broader than the jurisdictional immunity
afforded the sovereign itself" because of the "greater affront"
to sovereignty involved in "executi[ng] against a foreign
state's property" as opposed to "merely permitting jurisdiction
over the merits of an action").

"Government deposits" from the Republic's central bank's balance sheet as set out in the Republic's 18-K, filed with the SEC on November 1, 2021.  (Dkt. no. 52 at 3-4.)  This is the extent to which Bainbridge has identified the assets that it asks the Court to order turned over:

**Central Bank Balance Sheet**
**(in millions of pesos, unless otherwise specified)**

| | As of December 31, | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2016 | | 2017 | | 2018 | 2019 | | 2020 |
| **Assets** | | | | | | | | | |
| International reserves: | | | | | | | | | |
| Gold | Ps. | 33,313 | Ps. | 43,158 | Ps. | 85,281 | Ps.160,786 | Ps. | 316,238 |
| Foreign currency | | 368,453 | | 619,326 | | 1,658,318 | 1,740,554 | | 2,303,362 |
| Placements of foreign currency | | 207,294 | | 376,347 | | 760,307 | 786,790 | | 696,428 |
| Other(1) | | 5,479 | | (5,215) | | (16,658) | (1,939) | | (1,803) |
| Total international reserves(2) | | 614,538 | | 1,033,615 | | 2,487,248 | 2,686,192 | | 3,314,225 |

\* \* \*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Deposits: | | | | | | | |
| Government deposits | | 18,726 | 37,029 | 527,210 | 50,258 | | 68,849 |

(Dkt. no. 53-5 at D-100.)  This is simply not enough.

Under CPLR 5225, "a judgment creditor seeking a turnover order must identify the particular property as to which it seeks a turnover, whether a specific bank account, account receivable, or office furniture."  Bernard v. Lombardo, 2016 U.S. Dist. LEXIS 177620, at \*4 (S.D.N.Y. Nov. 23, 2016).  A judgment creditor may not simply demand that a judgment debtor turn over "funds sufficient to pay the Judgment in full, or alternatively to turn over to plaintiffs all property, including their out-of-

18

state property, sufficient to pay the Judgment." Id.  Courts in this Circuit have thus repeatedly denied motions pursuant to CPLR 5225 that are "directed at a defendant's assets generally" as opposed "to specific pieces of property." Jalbert v. Flom (In re BICOM NY, LLC), No. 19-01315 (MEW), 2021 Bankr. LEXIS 2669, at *13 (Bankr. S.D.N.Y. Sept. 29, 2021) (collecting cases).

Similarly, in order to perform the requisite analysis under 28 U.S.C. section 1610(a), the judgment creditor must identify "the specific accounts or funds . . . upon which they seek to execute judgment." Walters v. Indus. & Com. Bank of China, Ltd., 651 F.3d 280, 297 (2d Cir. 2011).  As with CPLR 5225, the party seeking to execute against a sovereign's assets under section 1610 may not simply seek "to attach and execute against the assets" "wherever the same may be located, which are beneficially owned" by the sovereign. Olympic Chartering v. Ministry of Indus. & Trade of Jordan, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2000).  Instead, the request must "specifically indicate which funds the plaintiff seeks to attach" because when the specific asset is not identified, "the Court cannot adequately review the propriety of attaching the assets of the judgment-debtor." Id.; see also Funnekotter v. Republic of Zim., 2011 U.S. Dist. LEXIS 14915, at *6-7 (S.D.N.Y. Feb. 10, 2011) (denying turnover motion where "Petitioners have not

identified the specific property owned by the Entities that is located in the United States and used for a commercial activity" and failed to "submit[] evidence from which to adduce that the Entities have property in the United States and that such property is used for a commercial activity").

Bainbridge effectively asks the Court to order the Republic to bring in sufficient assets from Argentina to the United States without identifying the specific assets it wishes to have turned over.  Bainbridge has done nothing more than identify funds, with no level of specificity, on a balance sheet in a publicly filed form and cited to various sections of the same form describing in extremely general terms how some of the funds may have been used.  What Bainbridge has not done is identify the specific accounts in which the funds are held and provide the Court with evidence specific to those accounts that would allow the Court to perform the necessary analysis under CPLR 5225 and 28 U.S.C. sections 1610(a) and 1611, such as account-specific evidence regarding the entity that owns or controls those specific accounts, how each specific account has functioned, how the funds in each specific account have been used, etc.[3]

---

[3] For the same reasons that the Court cannot adequately analyze the commercial activity exception under 28 U.S.C. section 1610, the Court cannot determine whether, as the Republic asserts, 28 U.S.C. section 1611 applies to some or all of the funds.

Without evidence going to the ownership and function of the accounts, Bainbridge has not satisfied its burden of demonstrating that an exception to execution immunity applies. Bainbridge cannot "shift the burden of identifying specific, recoverable assets onto" the Republic in the first instance, Walters, 651 F.3d at 297, or claim that the Republic's "silence" is sufficient to imply the necessary commercial activity (Dkt. no. 66 at 9-10).  The Republic has the ultimate burden of persuasion, but Bainbridge has not yet met "its initial burden of production," Beierwaltes, 999 F.3d at 816-17, because it has identified general funds and deposits instead of specific assets and therefore has necessarily failed to show that any specific asset is excepted from execution immunity.  The Court cannot order turnover on this record.  Bainbridge must "exhaust[] [its] powers of discovery pertaining to the judgment debtor's assets," Walters, 651 F.3d at 297, and "identif[y] the property on which [it] seek[s] to execute," Funnekotter, 2011 U.S. Dist. LEXIS 14915, at *8.

**D.    Conclusion**

Bainbridge asks the Court to order a sovereign to bring assets held in that sovereign country's central bank and deliver them to New York.  The Court has found it has the power to do so.  But Bainbridge must provide the evidentiary basis for doing so before the Court can exercise that power.  Bainbridge's motion is therefore DENIED without prejudice to renewal if, and when, it can do so.

The Clerk of the Court shall close the open motion at dkt. no. 51.

**SO ORDERED.**

Dated:     September 6, 2023
           New York, New York

_____
LORETTA A. PRESKA
Senior United States District Judge