**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BAINBRIDGE FUND LTD., | |
| Plaintiff, | |
| v. | 16 Civ. 08605 (LAP) |
| THE REPUBLIC OF ARGENTINA, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION FOR TURNOVER</u>**

DUANE MORRIS LLP
22 Vanderbilt
335 Madison Avenue, 23rd Floor
New York, NY 10017
(212) 692-1000
*Counsel for Plaintiff Bainbridge Fund Ltd.*

# TABLE OF CONTENTS

**Page**

Table of Authorities.............................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

      I.      The Republic's Ownership Interest in & Control of the Airline............................. 3

      II.     The Republic's Ownership Interest in & Control of the Bank.............................. 4

ARGUMENT ......................................................................................................................... 5

      I.      The Republic's Ownership Interests in the Bank
           and the Airline Are Not Immune From Execution Under the FSIA. ...................... 6

            A.      The Republic has waived immunity
                  of its ownership interests from attachment. ................................................ 7

            B.      The Republic uses its ownership interests in the
                  Airline and the Bank for commercial activity in the United States. ........... 8

            C.      The Republic's ownership interests are not
                  immune from execution by being outside the United States
                  and it is within the Court's power to order the transfer of the
                  Republic's ownership interests in both the Bank and
                  the Airline to the United States. ................................................................. 9

      II.     The Court Should Order the Turnover of the
           Republic's Ownership Interests in the Bank and Airline to Plaintiff. .................. 11

            A.      New York law entitles Plaintiff to this Court's assistance in reaching
                  the Republic's ownership interests in the Bank and the Airline. .............. 12

            B.      The Court should order the Republic to transfer its
                  ownership interests in the Bank and the Airline to
                  Plaintiff through a ustody account at a bank in New York. ...................... 13

CONCLUSION...................................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

<b>Page(s)</b>

<u>**Cases**</u>

*Bainbridge Fund Ltd. v. Republic of Argentina*,
  16-cv-08605 -LAP, 2025 WL 1796379 (S.D.N.Y. Jun. 30, 2025).................................. *passim*

*Bainbridge Fund v. Republic of Argentina*,
  690 F. Supp. 3d 411 (S.D.N.Y. 2023)..................................................................6, 10

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* ("*Crystallex I*"),
  333 F. Supp. 3d 380 (D. Del. 2018), *aff'd*, 932 F.3d 126 (3d Cir. 2019) .............................8, 9

*Exp.-Imp. Bank of the Republic of China v. Grenada*,
  768 F.3d 75 (2d Cir. 2014)............................................................................8

*Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*,
  41 A.D.3d 25 (1st Dept. 2007)......................................................................11, 14

*Inter-Reg'l Fin. Grp., Inc. v. Hashemi*,
  562 F.2d 152 (2d Cir. 1977).........................................................................11, 13

*J.P. Morgan Chase Bank, N.A. v. Herman*,
  168 A.3d 514 (Conn. App. Ct. 2017)..................................................................14

*Kirschenbaum v. 650 Fifth Ave. & Related Props.*,
  830 F.3d 107 (2d Cir. 2016), *vacated and remanded*, 830 F.3d 66 (2d Cir. 2016) .................8

*Koehler v. Bank of Bermuda Ltd.*,
  12 N.Y.3d 533 (2009) ...............................................................................11

*Peterson v. Bank Markazi*,
  121 F.4th 983, 1006 (2d Cir. 2024), *cert denied sub nom.*
  *Clearstream Banking, S.A. v Peterson*, 145 S. Ct. 2819 (2025) ............................................10

*Peterson v. Islamic Republic of Iran*,
  876 F.3d 63 (2d Cir. 2017), *vacated on other grounds sub nom.*
  *Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020) ................................10

## <u>Statutes and Other Authorities</u>

28 U.S.C. § 1610(a) ..............................................................................6, 7, 8

Foreign Sovereign Immunities Act ........................................................................ *passim*

**Page(s)**

Fed. R. Civ. P. 69(a)(1) ............................................................................................5

CPLR § 5201 ................................................................................................6, 11, 12

CPLR § 5225 .................................................................................................. *passim*

New York Uniform Commercial Code § 8-102 .......................................................14

New York Uniform Commercial Code § 8-112 ............................................. *passim*

Law No. 24, 156, *Ley de Administración Financiera y de los Sistemas de Control de Sector Público Nacional* (1992) .................................................................................9

## INTRODUCTION

Plaintiff Bainbridge Fund Ltd. ("Plaintiff" or "Bainbridge") requests this Court order the Republic of Argentina (the "Republic") to (i) turn over its ownership interests in Banco de la Nación Argentina (the "Bank"); (ii) turn over its ownership interests in Aerolíneas Argentinas (the "Airline"); (iii) transfer the Republic's ownership interests in both the Bank and the Airline to a custody account at a bank in New York (the "Custodial Bank"); and (iv) instruct the Custodial Bank to turn over the ownership interests to Plaintiff or its designees in satisfaction of this Court's December 1, 2020 judgment in favor of Plaintiffs (the "Judgment") in this action.

For nearly five years, the Republic has succeeded in circumventing the compulsory process to avoid enforcement and satisfaction of the $95,424,899.38 Judgment, strategically structuring its assets to prevent such an outcome. This motion presents an opportunity to end such evasions and, for once, require the Republic to make good on its obligations. There is no dispute that the Republic holds majority ownership in both the Bank and the Airline. This is reflected in both its own financial reporting and the documents governing the Airline and the Bank.[1]

---

[1] According to the Republic's 2024 18-K filing, the "Government carries out certain functions and commercial activities through state-owned and state-controlled enterprises including . . . Aerolíneas Argentinas S.A., the country's largest airline [and] Banco de la Nación Argentina, the national bank of Argentina . . ." SECURITIES AND EXCHANGE COMM'N, *18-K filing, Republic of Argentina* (2024) (Accessed at: https://www.sec.gov/Archives/edgar/data/914021/000119312524248271/d874716dex99d.htm). Pursuant to Decree No. 116/2025, 99.9% of the Bank's shares are owned by the Argentine government. Argentinean Republic, Decree No. 116/2025 (Accessed at: https://www.argentina.gob.ar/normativa/nacional/decreto-116-2025-409852/texto). The propriety of this decree is currently being challenged in Argentinean courts. *See* Martín Angulo, *La justicia confirmó la suspensión del decreto que transformaba al Banco Nación en una sociedad anónima*, INFOBAE (Jun. 6, 2025) (Accessed at: https://www.infobae.com/judiciales/2025/06/06/la-justicia-confirmo-la-suspension-del-decreto-que-transformaba-al-banco-nacion-en-una-sociedad-anonima/). Under the Airline's bylaws, the Argentine Government holds 99.99% of the total shares, consisting of both Class A and C stocks. Aerolíneas Argentinas, *Bylaws* (Accessed at: estatutoaerolineasargentinas.pdf).

Per this Court's June 30, 2025 Order, No. 16-cv-08605, ECF No. 189, (the "YPF Turnover Order"), an order directing the Republic to turn over to Plaintiff its ownership interests in the Bank and the Airline comports with the procedural and substantive requirements under New York's Civil Practice Law and Rules (the "NY CPLR"), the New York Uniform Commercial Code (the "NY UCC"), and the Foreign Sovereign Immunities Act (the "FSIA"). *See Bainbridge Fund Ltd. v. Republic of Argentina*, 16-cv-08605 -LAP, 2025 WL 1796379 (S.D.N.Y. Jun. 30, 2025).[2]

For the very reasons set forth in the YPF Turnover Order, this Court should grant Plaintiff's motion and direct the Republic to transfer its ownership interests in the Bank and the Airline into a custody account at a Custodial Bank in New York and instruct the Custodial Bank to turn over the ownership interests to Plaintiff or its designees.

## FACTUAL BACKGROUND

On December 1, 2020, the Southern District of New York entered judgment in the amount of $95,424,899.38 in favor of Bainbridge. The amount on judgment represented the unpaid value of the principal on the bond, the interest on the principal of the bond from November 4, 2010 through November 30, 2020, the interest on the unpaid interest, and all interest accrued from November 30, 2020 through December 1, 2020. The judgment and interest accrued thereafter remains wholly unpaid by the Republic to date. *See* Declaration of Anthony J. Costantini, ("Costantini Decl.") at ¶ 3.

---

[2] The YPF Turnover Order is currently being appealed by the Republic and the effect of that Order is stayed during the pendency of the appeal. No. 25-1686, Doc. No. 40. Bainbridge will agree to stay these proceedings in the event that this Court enters an order granting Bainbridge's Motion for Turnover.

## I.    The Republic's Ownership Interest in & Control of the Airline

Originally founded in 1950, Aerolíneas Argentinas, S.A. is recognized as the national flag-carrier of Argentina.[3] In December of 2008, the Argentine Congress "approved a law declaring that the shares of [the Airline] . . . were 'of public interest' and therefore subject to expropriation in accordance with Law No. 21,499." SECURITIES AND EXCHANGE COMM'N, 18-K FILING: REPUBLIC OF ARGENTINA (2024). The law allowed Argentina to take back 99.4% of the shares in the Airline from the Marsans group under President Cristina Kirchner's administration in 2008.[4] Since that time, the Republic has maintained its status as majority interest holder in the Airline, holding more than 99% of the shares in the Airline. *Id.*

Presently, the Government's holdings in Class A and Class C shares constitutes more than 99.99% of the total shares in the Airline. Aerolíneas Argentinas, S.A., *Bylaws*.[5] According to the Airline's Bylaws, the Republic's holdings in the Airline are registered, non-transferable ordinary shares. *Id.*

As majority interest holder, the "Government carries out certain functions and commercial activities" of the state-controlled Airline. SECURITIES AND EXCHANGE COMM'N, *18-K filing: Republic of Argentina* (2024). In other words, the Republic controls the Airline's major business and financial decisions through its ownership interests in the company, including those decisions involving its commercial activities within the United States. The Republic, through its ownership interests, has played a major role in directing the Airline's operations, including its

---

[3] *See* Centre for Aviation, *Aerolíneas Argentinas SA*., (Accessed at: https://centreforaviation.com/data/profiles/airline-groups/aerolineas-argentinas-sa).

[4] *See* Alexander Mitchell, *How Aerolíneas Argentinas Can Privatize Successfully*, Simple Flying (Jan. 26, 2025), (Accessed at: https://simpleflying.com/aerolineas-argentinas-privatization-successful/#:~:text=Quickly%20acquiring%20the%20carrier%2C%20Iberia,Merrill%20Lynch%2C%20and%20and%20Bankers%20Trust).

[5] (Accessed at: estatutoaerolineasargentinas.pdf).

decision to discontinue service between Ezeiza International Airport in Buenos Aires and New York City's John F. Kennedy Airport as of August 2024 and the Airline's continued operation of over fourteen (14) flights per week between Miami International Airport and Ezeiza Airport.[6]

## II.    The Republic's Ownership Interest in & Control of the Bank

Banco de la Nación Argentina was established in 1891, with its first U.S. branch opening in New York in 1973. BANCO DE LA NACIÓN ARGENTINA, *About BNA*.[7] The Bank later opened a Miami branch in 1980. Under President Milei's issuance of Decree 116/2025—which effectively converts the Bank from a public company into a "Sociedad Anonima", the functional equivalent of a U.S. corporation—the Republic maintains its status as majority shareholder, holding 99.9% of the Bank's capital stock. *See* Argentinean Republic, Decree 116/2025[8] (describing the conversion of shares of common stock in the same proportion as initial ownership, with 99.9% of shares owned by the Argentine Government and 0.1% owned by Banco de la Nación Argentina Foundation).[9] While the decree is currently under review in the Argentine courts, privatization of BNA remains a stated goal of President Javier Milei. Under the decree, the Argentine state "will exercise all its [shareholder] rights through the Economy Ministry [of the Republic]." *Id.* According to the Bank's Bylaws under Decree 116/2025, the Argentine Government's holdings

---

[6] *See* Aerolíneas Argentinas, Booking Tool, (Accessed at: https://www.aerolineas.com.ar/en-us/); *see also* Dillon Shah, *Aerolineas Argentinas To Cancel Buenos Aires-New York Route*, Simple Flying (Apr. 7, 2024), https://simpleflying.com/aerolineas-argentinas-cancels-buenos-aires-new-york-route/.

[7] (Accessed at: https://www.bnany.com/Interna/ViewPage/AcercaDeBNA).

[8] (Accessed at: https://www.argentina.gob.ar/normativa/nacional/decreto-116-2025-409852/texto).

[9] *See also* Buenos Aires Times, *Milei opens up Argentina's largest bank to private capital* (Feb. 20, 2025) (Accessed at: https://batimes.com.ar/news/economy/milei-opens-up-argentinas-largest-bank-to-private-capital.phtml).

in this entity are characterized as "endorsable nominative ordinary shares." Argentinean

Republic, Decree 116/2025.[10]

Similar to the Airline, the Republic's ownership interests in the Bank allow the Republic

to "carr[y] out certain functions and commercial activities" of the state-controlled Bank.

SECURITIES AND EXCHANGE COMMISSION, *18-K filing: Republic of Argentina* (2024). Pursuant to

Chapter I, Article 1 of the Bank's Charter, the Bank's activity is "coordinate[d] . . . with the

economic and financial policies implemented by the National Government." Banco de la Nación

Argentina, *Charter*, at 1.[11] Under Chapter I, Article 2, the "Bank's transactions are guaranteed by

the Argentine Nation." *Id.* Moreover, under Chapter V, Articles 10 and 12, the Bank is "managed

by a Board of Directors consisting of a President, a Vice-President and eight Directors," all of

whom are "appointed by the National Executive Branch" for a term of four years. *Id.* at 3–4.

The Bank's continued operation of branches in both New York and Miami has resulted in

a significant accumulation of assets in the United States. According to the United States Federal

Reserve Board, as of June 30, 2024, the New York branch of the Bank claimed $541 Million

USD in office assets and the Miami branch of the Bank claimed $380 Million USD in office

assets. THE UNITED STATES FEDERAL RESERVE BOARD, *Structure Data for the U.S. Offices of

Foreign Banking Organizations: Argentina* (Mar. 31, 2025).[12]

## ARGUMENT

As explained by this Court in its YPF Turnover Order, *see YPF Turnover Order*, 2025

WL 1796379 at *3, under Federal Rule of Civil Procedure 69(a)(1), "[t]he procedure on

---

[10] (Accessed at: https://www.argentina.gob.ar/normativa/nacional/decreto-116-2025-409852/texto).

[11] (Accessed at: https://www.bna.com.ar/Downloads/CartaOrganicaVersionIngles.pdf).

[12] (Accessed at: https://www.federalreserve.gov/releases/iba/202503/bycntry.htm).

execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located." CPLR § 5201 prescribes that "property which can be assigned or transferred" may be subject to enforcement of a money judgment. CPLR § 5201. New York's turnover statute, CPLR § 5225, provides New York courts with authority to issue a turnover order directed to the judgment-debtor or garnishee in custody of the judgment debtor's property. CPLR § 5225(a) and (b). Additionally, CPLR § 5225(c) provides that "[t]he court may order any person to execute and deliver any document necessary to effect payment or delivery." CPLR § 5225(c). Further, a creditor's legal process with respect to a debtor's interest in a security is governed by New York Uniform Commercial Code ("NY UCC") § 8-112.

However, as this Court has noted, it should first be established "whether the assets are subject to execution immunity [under the FSIA] before ordering that they be brought to the United States." *Bainbridge*, 16-cv-08605 -LAP, 2025 WL 1796379 at *5 (quoting *Bainbridge*, 690 F.Supp.3d at 417).

### I.    The Republic's Ownership Interests in the Bank and the Airline Are Not Immune From Execution Under the FSIA.

As this Court observed in its YPF Turnover Order, even where the court has the power to order a judgment debtor to "bring assets from outside New York into New York" in satisfaction of judgment, the court should determine whether the subject assets are afforded immunity from execution under the FSIA. *YPF Turnover Order*, 2025 WL 1796379 at *5; *see also Bainbridge Fund v. Republic of Argentina*, 690 F. Supp. 3d 411, 417 (S.D.N.Y. 2023) (noting the "'more prudent course' is to 'evaluate whether the assets are otherwise subject to execution immunity before ordering that they be brought to the United States.'"). Section 1610(a) of the FSIA provides that "[t]he property in the United States of a foreign state . . . used for commercial

activity in the United States, shall not be immune" from attachment or execution when "the foreign state has waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with terms of the waiver." 28 U.S.C. § 1610(a)(1). This Court noted three requirements for the property of a foreign state to be "amenable to execution": (i) the property "must be 'in the United States'"; (ii) "it must be 'used for commercial activity in the United States'"; and (iii) "the foreign state must have 'waived its immunity from attachment.'" 2025 WL 1796379, at *14 (quoting 28 U.S.C. § 1610(a)). These three requirements have undoubtedly been met as to both the Bank and the Airline.

    A.  The Republic has waived immunity of its ownership interests from attachment.

As this Court has recognized previously, the documents governing the bonds at issue in this matter contain enforceable waivers with respect to judgment, attachment, and execution. *See* ECF No. 95 at 2–4; *see also YPF Turnover Order*, 2025 WL 1796379 at *8. Consistent with the Form of Securities Agreement, the Specimen Note for the US040114GG96 Bond at issue in this matter includes an agreement from the Republic that states, in pertinent part:

> [t]o the extent that the Republic or any of its revenues, assets or properties shall be entitled . . . to any immunity from suit . . . from execution of a judgment or from any other legal or judicial process or remedy . . . the Republic has irrevocably agreed not to claim and has irrevocably waived such immunity to the fullest extent permitted by the laws of such jurisdiction and consents generally for the purposes of the [FSIA] to the giving of any relief . . . in connection with any . . . related judgment, provided that attachment prior to judgment or attachment in aid of execution shall not be ordered by the Republic's courts with respect to (i) the assets which constitute freely available reserves pursuant to Article 6 of the Convertibility Law. . .

ECF No. 61-1 at 12.

Section 1610(a) of the FSIA provides that property of a foreign state cannot be immune from execution where the parties have waived such immunity. Because the above waiver is applicable to the Republic's ownership interests in both the Bank and the Airline, these assets are not immune from execution under the FSIA.

B. <u>The Republic uses its ownership interests in the Airline and the Bank for commercial activity in the United States.</u>

Next, this Court should look to whether the Republic's ownership interests in the Bank and the Airline are "used for commercial activity in the United States". In other words, meeting this threshold requires that the Republic "actively utilize [their majority shareholder interests] in service of that commercial activity [in the United States]." *Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 90 (2d Cir. 2014). In *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, the Second Circuit found that Iranian companies "'used' partnership shares in a real estate company for commercial activity in the United States" through ownership and operation of a building in New York that generated revenue for the company and the use of the shares to direct the stateside operations of the foreign company. 830 F.3d 107 (2d Cir. 2016), *vacated and remanded*, 830 F.3d 66 (2d Cir. 2016).

In *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela* ("*Crystallex I*"), the Third Circuit held that where a foreign sovereign uses its shares "to direct a company's commercial activity <u>in the United States</u>," the requirements under FSIA § 1610(a) are satisfied, as "the sovereign's shares are 'used for' commercial activity in this country." 333 F. Supp. 3d 380, 417–20 (D. Del. 2018), *aff'd*, 932 F.3d 126 (3d Cir. 2019) (emphasis in original).

Here, the Republic controls both the Bank and the Airline through its status as majority interest holder. The National Executive Branch maintains its authority to privatize state-owned entities like the Bank and the Airline. This Court has noted that where a foreign state retains its

8

power to re-privatize a public entity, the shares are considered "fully transferable" under New York law. *See* 16-cv-08605 -LAP, 2025 WL 1796379 at *8.[13]

Under Argentine Law No. 24,156, "the state has a majority shareholding in the capital or participation in corporate decisions" with respect to corporations of the national state such as the Bank and the Airline. *See* Law No. 24, 156, *Ley de Administración Financiera y de los Sistemas de Control de Sector Público Nacional* (1992); *see also* ORGANIZATION FOR ECONOMIC CO-OPERATION AND DEVELOPMENT, *OECD Review of the Corporate Governance of State-Owned Enterprises: Argentina* (2018), at 30. The Bank's operation of bank branches in Miami and New York and the Airline's operation of fourteen flights per week out of Miami International Airport constitutes commercial activity in the United States. These business activities allow the Republic to "generate[] value for the compan[ies] through the use of the United States' markets." *See YPF Turnover Order*, 2025 WL 1796379 at *8. Thus, the Republic is using its ownership interests in the Bank and the Airline "to direct . . . the [respective] company's commercial activity in the United States." *Crystallex I* at 417.

   C.  The Republic's ownership interests are not immune from execution by being outside the United States and it is within the Court's power to order the transfer of the Republic's ownership interests in both the Bank and the Airline to the United States.

This Court has already considered the exact question of whether turnover of shares in a state-controlled corporation was precluded "by virtue of [their] being outside of the United States," holding that "the FSIA does not supersede NY CPLR and prevent the Court from

---

[13] Both the Bank and the Airline have been considered for privatization by the Argentinean government as recently as this year. *See* BUENOS AIRES HERALD, Christopher Martin, *Aerolíneas Argentinas announces it won't need state funding in 2025* (May 1, 2025) (accessed at: https://buenosairesherald.com/business/aerolineas-argentinas-announces-it-wont-need-state-funding-in-2025); *see also* BUENOS AIRES HERALD, *Banco Nación to become limited company in first step toward privatization* (Feb. 20, 2025) (accessed at: https://buenosairesherald.com/politics/banco-nacion-to-become-limited-company-in-first-step-toward-privatization).

ordering the Republic, a judgment debtor over which is has personal jurisdiction, to bring the [s]hares from outside of New York into New York to pay Plaintiff." *See YPF Turnover Order*, 2025 WL 1796379 at *9 (quoting *Bainbridge*, 690 F. Supp. 3d at 416); *See also* ECF No. 95 at 7; *YPF Turnover Order*, 2025 WL 1796379 at *5; *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 92 (2d Cir. 2017), *vacated on other grounds sub nom. Clearstream Banking S.A. v. Peterson*, 140 S. Ct. 813 (2020). While *Peterson* is not precedential here, this Court has previously recognized that it agrees with its reasoning. *See Bainbridge Fund Ltd. v. Republic of Argentina*, 690 F. Supp. 3d 411, 416 (S.D.N.Y. 2023).

The Second Circuit revisited this question last year in *Peterson v. Bank Markazi*, specifically finding that CPLR § 5225 "is one exception to the general principle that courts cannot reach extraterritorial property." 121 F.4th 983, 1006 (2d Cir. 2024), *cert denied sub nom. Clearstream Banking, S.A. v Peterson*, 145 S. Ct. 2819 (2025). While the *Peterson* court discussed the CPLR's extraterritorial reach in the context of 5225(b), which applies to third-party garnishees in possession of a judgment debtor's extraterritorial asset, there is no sensible distinction between that subsection (b) and subsection (a) in terms of the statute's extraterritorial reach as applied to a third-party garnishee or the judgment creditor themselves. As the *Peterson* court correctly noted, the court's ability to reach a judgment debtor's assets located abroad hinges on the U.S. court's exercise of personal jurisdiction over the judgment debtor or third-party garnishee.

Having established that the assets "would not be subject to execution immunity" upon being brought to the United States, this Court may exercise its authority under New York law to order the Republic to bring the Bank Assets and the Airline Assets into the United States.

II.    **The Court Should Order the Turnover of the Republic's Ownership Interests in the Bank and Airline to Plaintiff.**

Because the Republic's ownership interests in the Bank and the Airline are subject to transfer to Plaintiff under the FSIA as described in Part I, this Court should order the turnover of the Republic's ownership interests in the Bank and the Airline using procedures similar to those set forth in the YPF Turnover Order as described below.

New York's turnover statute, CPLR § 5225, provides New York courts with authority to issue a turnover order directed to the judgment-debtor or garnishee in custody of the judgment debtor's property. CPLR § 5225(a) and (b). Additionally, CPLR § 5225(c) provides that "[t]he court may order any person to execute and deliver any document necessary to effect payment or delivery." CPLR § 5225(c).

It is well-established that a New York court can order a judgment debtor or garnishee to turn over the judgment-debtor's extraterritorial property, including shares in a foreign corporation. *See, e.g. Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009); *Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*, 41 A.D.3d 25, 35, 39 (1st Dept. 2007); *Inter-Reg'l Fin. Grp., Inc. v. Hashemi*, 562 F.2d 152, 154–55 (2d Cir. 1977). In *Koehler*, the New York Court of Appeals recognized that extraterritorial assets can be ordered to be turned over so long as the court has personal jurisdiction over the defendant. *Koehler*, 12 N.Y.3d at 541 (holding that a New York court could order a garnishee bank to turn over stock certificates located in Bermuda and representing shares in Bermuda corporation).

The Republic's ownership interests in both entities are categorized as property "against which a money judgment may be enforced" by virtue of their nature as property that is assignable or transferable under New York law. CPLR § 5201(b). The Republic's ownership interests in the Airline are described under their respective Bylaws as "registered, non-

transferable ordinary shares." Aerolíneas Argentinas, S.A., *Bylaws* at 46-47;[14] Argentinean Republic, Decree 116/2025.[15] The Republic's shareholdings in the Bank under Decree 116/2025 are described as "ordinary non-transferable registered shares." Argentinean Republic, Decree 116/2025.[16] Additionally, under the Decree, the Bank's Bylaws additionally state that provisional certificates and global certificates may be issued. *Id.* at Title III, Art. 9. The Airline's Bylaws state that a meeting of the shareholders may be used to establish that all or certain classes of stock not represented by certificates may be recorded in accounts kept under their holder's names in the Corporation, commercial banks, investment banks and/or securities clearing houses as authorized by the Board of Directors. Aerolíneas Argentinas, S.A., *Bylaws* at 46-47.[17]

Because the property "consists of a right or share in the stock of a . . . corporation," "the corporation" is the "proper garnishee." CPLR 5201(c)(1). And regardless of the way the Republic's ownership interests in the Bank and Airline are described by the documents governing these entities, this Court is authorized to order the Republic to transfer its ownership interests in the Bank and Airline to a custody account in New York.

A. New York law entitles Plaintiff to this Court's assistance in reaching the Republic's ownership interests in the Bank and the Airline.

CPLR § 5201(c)(4) provides that a creditor's legal process to reach the interest of a debtor in a given security (whether certificated or uncertificated) is governed by NY UCC § 8-112, which provides that "[t]he interest of a debtor in a security entitlement may be reached by a

---

[14] (Accessed at: estatutoaerolineasargentinas.pdf).

[15] (Accessed at:  https://www.argentina.gob.ar/normativa/nacional/decreto-116-2025-409852/texto).

[16] (Accessed at: https://www.argentina.gob.ar/normativa/nacional/decreto-116-2025-409852/texto).

[17] (Accessed at: estatutoaerolineasargentinas.pdf).

creditor only by legal process upon the securities intermediary with whom the debtor's securities account is maintained. . ." NY UCC 8-112(c).

But where a debtor's security interest in a security "cannot readily be reached by other legal process," UCC § 8-112(e) provides that the creditor is "entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement." The Second Circuit has held that UCC § 8-112(e)'s predecessor "authorized [courts] . . . to issue an injunction in aid of the attachment which may take the form of a mandate requiring the defendant to bring the certificates into the state . . . and to deliver them into the actual physical control and possession of the sheriff." *Inter-Reg'l Fin. Grp.*, 562 F.2d at 154-55 & n.2. Thus, Bainbridge is entitled to this court's assistance in reaching the assets, because "the shares cannot readily be reached by other legal process." UCC § 8-112(e).

B. The Court should order the Republic to transfer its ownership interests in the Bank and the Airline to Plaintiff through a custody account at a bank in New York.

Plaintiff respectfully requests that the Court exercise its authority under CPLR § 5225(c) and UCC § 8-112(e) to issue an order requiring the Republic to take the following two steps: (i) transfer forthwith its ownership interests in the Bank and the Airline to a custody account with a Custodial Bank in New York; and (ii) instruct the Custodial Bank to transfer the Republic's ownership interests in the Bank and the Airline to Plaintiff or its designees. Just as in *Petersen Energia Inversora, S.A.U. v. Argentine Republic et al.*, No. 15-cv-02739 and in the YPF Turnover Order, the Republic's ownership interests will "qualify as property 'in the United States'" as required by the FSIA.

As noted in both *Petersen* and *Bainbridge*, "[o]nce the [ownership interests] are transferred into a global custody account at BNYM in New York, the Republic's ownership

interest in the shares will qualify as security entitlements." *YPF Turnover Order*, 2025 WL 1796379, at *10 ((*citing* NY UCC § 8-102(7),[18] 17;[19] NY UCC 8-112, Official Cmts., ¶ 3). As recognized by this Court, "because the global account will be held at the New York office of BNYM," "the Republic's security entitlements will have a New York situs." *Id.* (*citing J.P. Morgan Chase Bank, N.A. v. Herman*, 168 A.3d 514, 521–22 (Conn. App. Ct. 2017)).

The second part of this Court's order should require the Republic to instruct the Custodial Bank to transfer the Republic's ownership interests in the Bank and Airline to Plaintiff or its designees. *See Gryphon*, 41 A.D.3d at 39 (ordering judgment-debtor under CPLR § 5225(c) to "execute appropriate documents" to transfer shares in foreign corporations to plaintiffs).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court issue an order requiring the Republic to take the following two steps: (i) transfer its ownership interests in the Bank and the Airline to a custody account at a Custodial Bank in New York within 14 days from the date of the Court's order; and (ii) instruct the Custodial Bank to initiate a transfer of the Republic's ownership interests in the Bank and the Airline to Plaintiff or its designees within one business day of the date on which the interests are deposited into the account.

Dated: New York, New York
       October 17, 2025

DUANE MORRIS LLP

By:   *s/Anthony J. Costantini*
      Anthony J. Costantini
      David T. McTaggart
      Jillian Marie Dreusike

---

[18] NY UCC § 8-102(7) defines an "entitlement holder" as "a person identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary." NY UCC § 8-102(7)
[19] NY UCC § 8-102(17) defines a "security entitlement" as "the rights and property interest of an entitlement holder with respect to a financial asset . . ." NY UCC § 8-102(17).

22 Vanderbilt
335 Madison Ave, 23rd Floor
New York, NY 10017
Tel.: +1 212 692 1000
Fax: +1 212 692 1020

*Attorneys for Judgment Creditor Bainbridge
Fund Ltd.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Anthony J. Costantini, certify that the forgoing Plaintiff's Memorandum of Law in Support of Its Motion for Turnover complies with the word count limit set forth in Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York in that the word count of this Memorandum of Law, excluding the caption, table of contents, table of authorities, and signature block, contains 4,358 words. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum of Law.

October 17, 2025

*s/ Anthony J. Costantini*
Anthony J. Costantini
